**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| UNITED STATES OF AMERICA<br>　　　Plaintiff<br><br>vs.<br><br>LUIS FIGUEROA-PACHECO<br>　　　Defendant | CRIMINAL NO.: 16-666 (ADC) |

**SENTENCING MEMORANDUM**

**I. Introduction**

A sentencing court should not sentence an individual just to punish him or her, but rather, should craft a sentence that takes into account various factors, including the need for rehabilitation, deterrence and safety to the community. In this analysis, imprisonment or longer terms of imprisonment is inappropriate in many cases. This is exactly why § 3553 (a) exists. In the instant case, after considering all relevant § 3553(a) factors, the parties agreed to recommend a term of imprisonment of twenty four (24) months. PSR ¶4. Twenty four (24) months is a just sentence, and not greater than necessary.

　　**A.　Who is Luis Figueroa-Pacheco?**

Luis is a 32 year old young man who was born on a military base in Germany, because his father was in the US Army and stationed in that country. At the age of three, he moved to Puerto Rico and settled in Peñuelas where he grew up. Peñuelas is a small, sleepy town on the southwestern coast of Puerto Rico. Peñuelas was hit hard by Hurricane Maria this past September. Roads and bridges collapsed and many residents

remained isolated for days. Below is a photograph of a collapsed road in Peñuelas.[1] Still today, many people in Peñuelas are struggling to recover. Lack of drinking water, healthcare and food is a constant problem. Luis' parent's home was damaged in the storm. The Court should note that nearly a month after the hurricane hit, more than 80% of Puerto Ricans still are without power.



Luis was raised by both parents. Luis' father was a military man who reared him and his brother in a strict household. His parents instilled in him the beliefs and teachings of the Pentecostal religion. Luis did not graduate high school but he obtained his G.E.D. in 2011. PSR ¶72. He pursued a chef's course afterwards. In 2003, he moved to California with his family looking for a better life. However, he returned to Puerto Rico four years later after his grandfather was diagnosed with cancer. PSR ¶56.

---

[1] http://www.tunoticiapr.com/noticias-locales/1671721453-Fotos:-Se-derrumba-carretera-en-Pe%C3%B1uelas Last Accessed: Oct. 23, 2017.

Unfortunately, Luis began getting into trouble after he returned to Puerto Rico. He was unemployed, began using marijuana and started hanging out with the wrong crowd. His interactions with shady people eventually led him to fear for his life. His well-founded fear for his life led him to make the decision to obtain a gun for his protection.

In 2009, Luis was arrested and obtained his first conviction for possession of a firearm. He was sentenced to 5 years imprisonment. After his release from prison, Luis attempted to get his life back on track, but his past kept coming back to haunt him. In 2012, he was arrested and convicted in federal court for possession of a firearm.

In 2013, Luis was released after serving his sentence. He attempted whole heartedly to rectify his life. Luis landed a job at his aunt's pizzeria in Guayanilla, PR. He began receiving substance abuse treatment at ETHOS in Ponce, PR. Luis was progressing for nearly three years. However, in 2016 Luis learned that he was being blamed for a murder that he did not commit. He knew the reputation of the people accusing him and was certain that they would seek to hurt him.[2] Caught in a conundrum, Luis sought a gun for his protection. Luis also worked the late shift at his aunt's pizzeria and relied on the gun to protect him against potential robbers. PSR ¶18.

Luis accepts his responsibility for possessing a firearm and is greatly remorseful. PSR ¶18-19. By accepting his responsibility, Luis now comes before this Honorable Court requesting leniency and a just sentence. During his time in prison, Luis wants to

---

[2] Luis was charged in state court with murder in September, 2016. However, the case was dismissed on December 1, 2016. PSR ¶49. Luis maintains his innocence of the charges.

Page 3

learn English and take vocational courses. Once released from prison, he will have employment in his aunt's pizzeria. PSR ¶54.

### B. The USSG §2K2.1 guideline results in an imprisonment range that is greater than necessary to fulfill the purposes of sentencing.

The firearms guideline (§ 2K2.1) is unreliable, ineffective and results in a potential sentencing range that is greater than necessary to serve the purposes of sentencing. According to data collected by the U.S. Sentencing Commission, there has been an increasing trend among sentencing courts to sentence **below** the applicable §2K2.1 guideline ranges since 2005. [*See* **Exhibit 1**].³ In fact, sentences below the guideline range have steadily increased since *Booker*.⁴ For example, in 2006, the first full statistical year after *Booker*, the total number of sentences below the guideline range due to variances was only 8.2%. In 2016, it was nearly 23%. In other words, more than one-fifth of all sentences in §2K2.1 cases are below the applicable guideline range. If we are to include ***all*** sentences below the guideline range for 2016 in firearms cases – departures, variances and government sponsored departures – the number jumps to 42%.

Additionally, sentences that are *within* the guideline range have continuously decreased since *Booker*. In 2004, 80.4% of all §2K2.1 cases were within the guideline range. In 2016, that number was only 54%. Likewise, sentencing courts rarely sentence

---

³ The data discussed in this motion, including data in Exhibit **1**, are drawn from **Table 28**, in post Booker reports, in "Sentences Relative to the Guideline Range by Each Primary Sentencing Guideline" from FY 2006 to 2016, in the USSC Sourcebook of Federal Sentencing Statistics, prepared by the USSC Commission available at http://www.ussc.gov/research/sourcebook).
⁴ United States v. Booker, 5433 U.S. 220 (2005)

above the guideline range. In 2016, for example, only 3.9% of sentences were above the applicable guideline range.

This data compels the conclusion that the ranges resulting from the current versions of the firearms guidelines are far greater than necessary to meet the purposes of sentencing. The data shows that the §2K2.1 guideline cannot be deemed to represent a reliable guide to the minimally sufficient sentence. We urge the Court to view the §2K2.1 with skepticism as many other sentencing courts have. At the very least, the Court should be disinclined to vary upward from the applicable guideline range.

### C. A longer sentence of imprisonment does not serve purposes of deterrence nor does it protect the community

Empirical research shows no relationship between sentence length and deterrence. A 2015 report from the Brennan Center for Justice concluded that "increased incarceration has had no effect on the drop in violent crime in the past 24 years."[5] "[I]ncreased incarceration accounted for approximately 6 percent of the reduction in property crime in the 1990s (this could vary statistically from 0 to 12 percent), and accounted for *less than 1 percent* of the decline in property crime this century."[6] For gun crimes, there is no reliable evidence of a general deterrent effect of lengthy sentencing that impose additional years of imprisonment for crimes committed with a gun.

It is not the length of the sentence, but rather the certainty of a sentence, that imparts the deterrent effect. The rationale is that people are more motivated by the

---

[5] Dr. Oliver Roeder, Lauren Brooke-Eisen and Julia Bowling. Brennan Center for Justice. *What Caused the Crime Decline?* (2015) at Page 15. *available at* https://www.brennancenter.org/publication/what-caused-crime-decline

probability of being caught than by the severity of the punishment. It is highly unlikely that future offenders in Puerto Rico will know what sentence was imposed on Luis in the instant case and based on that fact alone, be deterred from committing similar crimes. Very few potential offenders will understand how the guidelines work and few will engage in a rational cost-benefit analysis prior to committing a crime.

Sentences are also intended to make the community safer and remove the danger a defendant poses. However, young defendants who receive a sentence of imprisonment longer than necessary are likely to become hardened criminals during their incarceration making them a greater danger to the community when they get out.

### D. Revocation proceedings

Luis was under federal supervision when he was arrested in the instant case. When his supervised release term is revoked, Luis will be facing up to two (2) years in prison, which could potentially be consecutive to the sentence imposed in the instant case. Thus, his already lengthy sentence could nearly be doubled after revocation proceedings. The need to sentence him to a higher sentence than 24 months in the instant case is mitigated by the fact that he will receive additional imprisonment time in his revocation case.

## II. Conclusion

A sentence of imprisonment of **24 months** is appropriate and will serve the purposes of § 3553(a). A longer sentence of imprisonment based solely on the need for punishment will undermine the remaining § 3553(a) factors. In addition to being the agreed upon sentence recommendation, twenty four (24) months is also the lower end of

---

[6] Id.

the applicable guideline range in the instant case. PSR ¶83. Thus, in the instant case 24 months is more than sufficient when considering all the § 3553(a) factors and the aforementioned arguments.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, October 23, 2017.

I HEREBY CERTIFY that on October 23, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.

ERIC VOS
**FEDERAL PUBLIC DEFENDER**

S/JESÚS A. HERNÁNDEZ-GARCÍA
Assistant Federal Public Defender
USDC - PR 226812
241 F. D. Roosevelt Avenue
San Juan, PR  00918-2305
Tel.  (787) 281-4922
Jesus_Hernandez@fd.org